ANDERSON, *Petitioner,*

*v.*

EMPLOYMENT DIVISION et al, *Respondents.*

(No. 75-AB-460, CA 4831)

546 P2d 779

*C. S. Emmons,* Albany, argued the cause for petitioner. With him on the brief were Emmons, Kyle, Kropp & Kryger, Albany.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

**FORT, J.**

Claimant appeals from a decision of the Appeals Board of the Employment Division, Department of Human Resources, denying him unemployment compensation benefits because he was not actively seeking work as required by ORS 657.155.[1]

The facts were undisputed. Claimant had been employed at Wimer Logging Company for eight years as a log truck driver, and he and other drivers were routinely laid off from December until March because of weather. In December 1974 claimant applied for unemployment compensation and then left for Arizona to await the reopening of his employer's operations. He did not leave a forwarding address, but expected the unemployment compensation checks to accumulate in his post office box in Sweet Home until he returned in March. He had gone to Arizona the year before and had received the checks on his return.

During the time he was out of the state claimant regularly contacted Wimer to find out when work would be starting in the spring and was prepared to

---

[1] ORS 657.155(1) provides:

"(1) An unemployed individual shall be eligible to receive benefits with respect to any week only if the administrator finds that:

"(a) He has registered for work at and thereafter has continued to report at an employment office in accordance with such rules as the administrator may prescribe. *However, the administrator may, by rule, waive or alter either or both of the requirements of this subsection as to individuals attached to regular jobs* and as to such other types of cases or situations with respect to which he finds that compliance with such requirements would be oppressive, or would be inconsistent with the purposes of this chapter; provided, that no such rule conflicts with ORS 657.255.

"(b) He has made a claim for benefits with respect to such week in accordance with ORS 657.260.

"(c) He is able to work, is available for work, and is actively seeking and unable to obtain suitable work. No individual participating in a community work and training program, as defined in ORS 411.855, shall, solely by reason thereof, be deemed unavailable for work within the meaning of this section.

"(d) He has been unemployed for a waiting period of one week." (Emphasis supplied.)

return as soon as he was needed. From California and Arizona claimant filed unemployment claim forms with respondent. Claimant was denied unemployment benefits by Administrator's Decision on the ground that he was not actively seeking work but was actually on vacation.

Claimant did not receive the first two rejection notices in time to request a hearing within the ten days allowed by ORS 657.265 since his mail was being held in his post office box until his return. Immediately on his return he filed requests for hearings on all denied claims. The requests were not filed within ten days after notice of denial for two Administrator's Decisions covering two of the weeks but were timely for the other decisions denying coverage for seven weeks.

A claims adjuster in the local Lebanon office and the respondent's sole authorized representative at the hearing testified that that office had a practice of not requiring employes who were seasonally laid off to check in with the placement section each week looking for work. Instead, that office had concluded it was sufficient to meet the "actively looking for work" requirement if the workmen who were regularly established employes over a substantial period maintained contact with their respective employers so they could be notified to and did return to their regular job when work started up again at the end of the winter layoff. The reason for this was that when employes were laid off, particularly in the logging industry during the winter months due to weather, there were no similar jobs available in the area. This practice was used only with employes, like claimant, who were well established with employers that were recognized by the division as having seasonal layoffs necessitated by normal winter weather. No contrary evidence was offered by any party.

The claims adjuster testified further that claimant was denied benefits this year in contrast to the year

before because the office had been unable to contact him and so could not tell what his intentions were with regard to his returning to work nor whether he was in contact with his employer. It was undisputed, however, that claimant had in fact kept in regular touch with his employer, that he was at all times ready to return to work as soon as weather conditions permitted the reopening of the employer's operation, and that he returned as soon as the employer could put him to work.

Claimant contends that since he was at all times ready to return to work for his previous employer and had in fact kept in touch with him, he met the requirements of ORS 657.155 as above applied by the Employment Division with regard to being available for and actively seeking work.

Since this case was decided below we have decided *Henderson v. Employment Div.*, 22 Or App 378, 539 P2d 665 (1975), in which a similar question was raised. In that case it was admitted that claimant was not actively calling on potential employers since he had been told by a representative of the Employment Division that work in his field was not available in that area, and thus that he need not do so. Claimant was attending school but was ready to leave it to work. This court reversed the Employment Appeals Board and affirmed the finding of the referee that claimant was actively seeking work under ORS 657.155. There we said:

> "* * * [H]ere it is agreed that the claimant was told by a representative of the Employment Division that there was no point in seeking work in the general area in which he lived because no employment in his field was currently available and he might as well wait until he was called back by his previous employer." 22 Or App at 380.

On the basis of *Henderson* we conclude that claimant here met the requirements of ORS 657.155.

The second issue on appeal is whether claimant had good cause for not filing his notices of appeal on time for two of the nine weeks for which he was denied unemployment compensation. ORS 657.265 requires that claimant must request a hearing on a determination of his claim within ten days after it was mailed to his last known address. ORS 657.875 allows a reasonable extension of time to request a hearing upon a showing of good cause for the delay.

Claimant submits that he had good cause for the delay since he had no reason to expect denial of benefits and since he did not want to have his mail forwarded for safety reasons. We believe that it is claimant's initial responsibility to assure that he gets his mail after it is delivered to his correct address and when he leaves that address for extended periods as here to make sure that notices relating to his claims for compensation are timely brought to his attention. Failing to have his mail forwarded under these circumstances does not constitute a showing of good cause under ORS 657.875. We note, too, that the statute itself, ORS 657.265(2), provides only that the notice be mailed to claimant's last known address. Here claimant did nothing to see that he was advised of his mail which was sent to him as the statute required. We conclude that respondent correctly refused to consider the untimely appeals from the two notices in question.

Affirmed in part, reversed in part.

**SCHWAB, C. J.,** concurring.

I agree with the reasoning and the result of the majority opinion, but wish to emphasize my understanding of the relatively narrow scope of our holding.

To qualify for unemployment compensation benefits, a claimant must be "actively seeking and unable to obtain suitable work." ORS 657.155(1)(c). "Actively seeking" is apparently to be given its ordi-

nary meaning; "suitable work" is very generally defined in ORS 657.190 and 657.195.

The broad question presented by this case is whether workers laid off seasonally who expect to and are holding themselves available to go back to work for the same employer must, under the above statutes, seek temporary employment in other fields in order to qualify for unemployment benefits. I say that is a "broad question" because of the large amount of seasonal employment in Oregon in areas like logging and agriculture.

The statutes being inconclusive on this broad question, we asked the Employment Division to furnish us with their relevant regulations in a supplemental brief. In response, the Division cites only OAR 471-30-070:

"In determining whether an individual has good cause for refusing to apply for * * * work * * * the Administrator may * * * rule that a claimant did not have good cause * * * if he has had six weeks or more to seek out work in his customary and usual occupation * * *."

The Division explains that this means:

"* * * After six weeks of unemployment, we expect that they [i.e., claimants] will expand their work search to include other fields in which they have prior experience or training.

"* * * [Thus, a person in the present claimant's position] should have expanded his work search to include other truck driving jobs for industries which do not close down during January, February and March * * *."

However, as the majority correctly states, the record is clear that the local personnel who processed this claim felt that generally a person in claimant's position sufficiently complies with ORS 657.155(1)(c) by holding himself available to go back to work for the same employer at the end of the seasonal layoff. Apparently, either the local personnel are unaware of the interpretation placed on OAR 471-30-070 by the Emp-

loyment Division, or they are operating autonomously. On this record, I join in holding claimant entitled to benefits.

But I do not understand this decision to be a resolution of the broad question noted above. In other words, I do not think we are holding all loggers are per se entitled to three months of unemployment benefits during the winter layoff. On a different record, requiring a search for temporary employment in other industries might well be reasonable.

I also agree that claimant failed to establish good cause for the appeals that he filed late under the very limited scope of our review of that issue.